## CLAUDIA WEISS *v.* MARTIN T. WEISS
### (SC 18209)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued October 20, 2009—officially released July 20, 2010

448

*Gerald S. Sack*, with whom was *Eamonn S. Wisneski*, for the appellant (plaintiff).

*Anthony R. Minchella*, with whom, on the brief, was *Elizabeth S. Lachterman*, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, Claudia Weiss, appeals[1] from the trial court's summary judgment rendered in favor of the defendant, Martin T. Weiss, the plaintiff's former husband, on the basis of the court's conclusion that the plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel. At the heart of this dispute is the plaintiff's contention that workers' compensation cases are "personal injury cases" for the purposes of a contingency fee splitting provision in the parties' marital dissolution agreement. Although the defendant argues that res judicata and collateral estoppel bar the plaintiff's action, the plaintiff claims that no aspect of the prior dissolution proceeding, including the hearing on the defendant's subsequent motion for clarification regarding "personal injury cases," prevents her from litigating the definition of that term in this separate action. Because we conclude that the plaintiff's claims are barred by the doctrine of res judicata, we affirm the judgment of the trial court.

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The record reveals the following relevant undisputed facts and procedural history. The parties were married in 1987 and were partners in a law firm, the Law Offices of Weiss and Weiss (law firm), from December, 1988, until December, 1999. In December, 1999, the plaintiff commenced an action for the dissolution of the marriage. The parties executed a separation agreement (agreement), drafted by the plaintiff, which contained terms regarding the dissolution of both the marriage and the law firm. Specifically, it contained the following provision: "The [plaintiff] shall receive [one third] of all contingency fees generated from personal injury cases at . . . [the law firm] active as of November 1, 1999 . . . . The parties have also agreed that the [plaintiff] shall receive a [20 percent] interest in the fee generated from a recent stipulated settlement in the [s]econd [d]istrict [w]orkers' [c]ompensation [d]ivision entitled [*Cote* v. *Tomasso Construction*]."

On July 12, 2000, and before the court heard evidence about the agreement, the defendant provided the plaintiff with copies of the law firm's account statements from August through December, 1999, as well a list of "[a]ctive [p]ersonal [i]njury [f]iles [t]hrough November, 1999." The list included the name, date of loss and status of sixty-nine cases.

On June 10, 2002, the defendant moved for summary enforcement of the agreement. During the dissolution trial that followed, the plaintiff claimed that various provisions in the agreement were ambiguous, including the phrase "of counsel," the lack of a schedule of personal property, the paragraph stating that the parties had sufficient knowledge of each other's finances, and provisions regarding fee splitting, which did not specify whether the plaintiff was to receive her share from the net or gross fees. The plaintiff conceded at that time that the remaining terms of the agreement were not ambiguous.

After a nine day trial, which included twenty-two witnesses and seventy-three exhibits, the court, *Scholl, J.*, by way of a memorandum of decision dated January 3, 2003, found that, pursuant to General Statutes § 46b-66 (a),[2] the agreement was fair and equitable. The court also found that the agreement was enforceable against the parties, noting that no settlement agreement may be summarily enforced unless the terms of the agreement are clear and unambiguous.[3] The court then entered a decree dissolving the parties' marriage on the ground of irretrievable breakdown and incorporated the agreement by reference into the judgment.

On March, 8, 2004, the plaintiff filed a request with the workers' compensation commission seeking all workers' compensation claims handled by the law firm. In response, the plaintiff received a list of eighty-seven workers' compensation cases classified as " 'active' " on November 1, 1999. In a subsequent affidavit, the plaintiff stated that these cases were not included on the list of personal injury cases that the defendant had provided to her during the dissolution proceeding.

On October 29, 2004, the plaintiff filed a four count complaint in federal district court, wherein she alleged breach of contract, breach of fiduciary duty, fraud and

[2] General Statutes § 46b-66 (a) provides in relevant part: "In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ."

[3] See *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993) ("[a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous").

conversion. See *Weiss* v. *Weiss*, 375 F. Sup. 2d 10 (D. Conn. 2005). The primary allegation in the complaint was that the defendant was improperly withholding one third of the fees of his workers' compensation cases in violation of the agreement.[4] Id., 14. On June 15, 2005, the court granted the defendant's motion to dismiss for lack of subject matter jurisdiction.[5] Id., 14–15, 19.

On November 8, 2004, prior to the resolution of the federal action, the defendant filed a motion for clarification of the dissolution judgment. Specifically, the defendant sought clarification that "the [p]laintiff waived any claim over . . . [w]orkers' [c]ompensation cases which [are] distinguished from the [p]ersonal [i]njury cases for which she was awarded an interest." The plaintiff objected and filed a motion to strike the motion for clarification on the ground that, inter alia, the court did not have jurisdiction because the defendant's motion for clarification was, in substance, a motion to open and modify the judgment of dissolution.

At the April 20, 2005 hearing on the motion, the court, *Scholl, J.,* denied the plaintiff's motion to strike, concluding that the defendant's motion was properly characterized as a motion for clarification and that the court therefore was limited to restating, rather than changing, the dissolution judgment. The plaintiff then argued that the phrase "personal injury cases" encompassed workers' compensation cases and noted that she had

---

[4] Although the plaintiff had previously filed motions for contempt regarding a pendente lite alimony order, she did not file a motion for contempt with regard to the judgment of dissolution. We note that the granting or denial of a motion for contempt is an appealable judgment. See, e.g., *Isham* v. *Isham*, 292 Conn. 170, 179, 972 A.2d 228 (2009); *Jewett* v. *Jewett*, 265 Conn. 669, 671 n.1, 830 A.2d 193 (2003).

[5] Because the federal action was dismissed for lack of subject matter jurisdiction; *Weiss* v. *Weiss*, supra, 375 F. Sup. 2d 19; a ground that by its very nature precludes the court from considering the merits of the plaintiff's claims, we need not consider the federal action for the purposes of the defendant's res judicata and collateral estoppel arguments.

assumed that the defendant had included workers' compensation cases in the list that he had provided to her. She argued that "personal injury cases" would naturally include workers' compensation cases because both involve an injury to an individual and a contingency fee. The defendant argued that, by specifying in the agreement that the plaintiff would receive a smaller percentage of the fee in one particular workers' compensation case, the parties indicated that "personal injury cases" did not encompass workers' compensation cases. He also argued that any ambiguity in the agreement should be construed against the plaintiff because she had drafted it, and that she had evidenced her understanding that workers' compensation matters were distinct from personal injury cases by referring to them separately in her testimony regarding the defendant's practice areas at the dissolution proceeding. The court declined to hear evidence and issued an oral decision, stating that "[i]t seems to me [that the language regarding the splitting of personal injury contingency fees is] clear and unambiguous that it means personal injury action. It doesn't mean workers' comp[ensation]. If it did, they wouldn't have had to make the exception for the workers' comp[ensation] matter regarding the *Cote* case and, therefore, I'm going to . . . grant the motion to clarify just to say that I believe . . . [the relevant language] does not include the worker[s'] comp[ensation] cases. Personal injury does not mean workers' comp[ensation] cases."

The plaintiff then challenged the ruling on appeal to the Appellate Court. In his motion to dismiss that appeal, the defendant argued that the plaintiff could not properly appeal from the motion for clarification because that motion did not give rise to a new appeal period.[6] By order dated June 22, 2005, the Appellate

---

[6] See Practice Book § 63-1 (c) (1) ("[m]otions that do not give rise to a new appeal period include those that seek: clarification or articulation, as opposed to alteration, of the terms of the judgment or decision"). The motion

Court granted the defendant's motion, but did not state the basis for its decision.[7] Subsequently, this court denied the plaintiff's petition for certification. *Weiss* v. *Weiss*, 276 Conn. 905, 884 A.2d 1027 (2005).

On December 16, 2005, the plaintiff brought the present action, and, thereafter, filed an amended five count complaint. Specifically, count one alleged that the defendant had breached his contract with the plaintiff by failing to pay her one third of all contingency fees from personal injury cases at the law firm active as of November 1, 1999. Count two alleged that the defendant had breached his fiduciary duties when he failed to include contingency fee workers' compensation cases in the list of "all active contingent matters" at the law firm as of November 1, 1999, which he had provided to the plaintiff. In count three, the plaintiff alleged that in order to induce the plaintiff to sign the agreement, the defendant had fraudulently represented that he would disclose and itemize all contingency fee cases at the law firm active as of November 1, 1999, and pay the plaintiff her interest in the recoveries in those matters. Counts four and five alleged that the defendant had wrongfully converted property and funds to which the plaintiff was entitled, and had committed theft pursuant to General Statutes § 52-564.[8]

In his answer, the defendant denied all of the allegations in all of the counts and raised six special defenses.

for clarification in the case before us is distinguishable from the motion for clarification at issue in our recent decision in *Mickey* v. *Mickey*, 292 Conn. 597, 603–604, 974 A.2d 641 (2009). The motion in *Mickey* dealt with facts that were not and could not have been known at the time of the dissolution action because those facts developed subsequent to the dissolution of the parties' marriage. Id., 601–602, 607.

[7] The plaintiff filed a motion for reconsideration, which the Appellate Court denied. The plaintiff did not file a motion for permission to file a late appeal.

[8] General Statutes § 52-564 provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

Specifically, the defendant argued that the plaintiff's claims were barred by the doctrines of res judicata, collateral estoppel and equitable estoppel because the matters had been litigated in the dissolution action. The defendant also argued that the plaintiff's claims were barred by the doctrine of laches, the parties' agreement and the applicable statutes of limitation, and that the plaintiff had failed to state a claim upon which relief could be granted. Additionally, the defendant brought a counterclaim seeking a judgment declaring that workers' compensation cases are not personal injury cases for the purposes of the agreement and seeking dismissal of the plaintiff's complaint.

On August 16, 2007, the defendant filed a motion for summary judgment on the plaintiff's complaint and on his counterclaim, to which the plaintiff objected. At the hearing on the motion, the defendant argued that the plaintiff had the opportunity to raise and litigate the meaning of "personal injury cases" at the dissolution proceeding, and then again at the hearing on the motion for clarification. He also argued that, in its ruling on the motion for clarification, the court simply had restated what it had decided in the dissolution proceeding and that the plaintiff's only remedy was to seek to open the dissolution judgment on the basis of fraud.

In response, the plaintiff argued that because the meaning of "personal injury cases" had not been actually litigated at the dissolution proceeding, the court could not clarify the dissolution judgment. Specifically, the plaintiff argued that by addressing a perceived ambiguity in the agreement, the court contradicted its earlier finding that the agreement was clear and unambiguous. The plaintiff further argued that res judicata and collateral estoppel do not apply because the factual showings necessary to sustain a civil action are distinct from the facts at issue in a dissolution proceeding. Lastly, the plaintiff argued that the defendant should be precluded

from arguing that the court's ruling on the motion for clarification is a final judgment because he had argued a contrary position in his motion to dismiss the plaintiff's appeal to the Appellate Court.

On April 8, 2008, the court, *Booth, J.*, in a memorandum of decision, rendered summary judgment in favor of the defendant as to each count of the plaintiff's complaint and denied the defendant's motion for summary judgment as to his counterclaim for a declaratory judgment. The court first concluded that the defendant's motion in the dissolution action was properly considered a motion for clarification because Judge Scholl's ruling "did not change a single word of the dissolution judgment, nor cause any substantive change in the final decision." The court then rejected the plaintiff's claim that she had no other recourse than to file the present action, noting that she could have brought a motion to open the dissolution judgment on the basis of an exception to the four month limitation period for motions to open. See General Statutes § 52-212a;[9] *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 466, 440 A.2d 159 (1981) ("even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened [after the four month limitation] . . . if it is shown that the stipulation, and hence the judgment, was obtained by fraud, in the actual absence of consent, or because of mutual mistake" [internal quotation marks omitted]).

Turning to the doctrine of res judicata, the court distinguished the present action from *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582,

---

[9] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

583–84, 674 A.2d 1290 (1996), in which we determined that the doctrine of res judicata did not bar the plaintiff in that case from bringing a postdissolution action, sounding in tort, against her former spouse for damages incurred as a result of conduct that occurred during the marriage. We concluded that it would be an "inappropriate application of the principles of res judicata to require tort actions based on claims arising between married persons to be litigated in a dissolution proceeding" and noted that a tort action "is not based on the same underlying claim[s] as an action for dissolution . . . ." Id., 592. The trial court concluded that the present case is distinguishable from *Delahunty*, noting that "the entirety of the complaint rests on a contract claim . . . [and] depends upon an interpretation of the . . . agreement," which had been presented to the court in the dissolution action. The meaning of that agreement, the court reasoned, had been decided previously, foreclosing the plaintiff's current claims. Similarly, the court concluded that collateral estoppel barred the plaintiff's claims because the meaning of the disputed provision had been decided in the dissolution judgment and subsequent order of clarification.[10] This appeal followed.

Relying on *Delahunty*, the plaintiff argues that the court improperly granted the defendant's motion for summary judgment on the basis of res judicata because dissolution actions do not have a preclusive effect on subsequent contract or tort actions between the same parties. The plaintiff argues that, although the allegations in her complaint relate to the agreement, the fact that each sounds in tort or contract renders the present case indistinguishable from *Delahunty*. The plaintiff further argues that the trial court improperly concluded

---

[10] The court denied the defendant's motion for summary judgment on his counterclaim on the ground that there was no actual bona fide and substantial question in dispute. The defendant subsequently withdrew his counterclaim.

that her claims were barred by collateral estoppel because the issue of whether the phrase "personal injury cases" encompasses workers' compensation cases never was actually litigated nor necessarily determined in either the dissolution proceeding or the hearing on the motion for clarification. Finally, the plaintiff argues that the defendant should be precluded, on the basis of judicial estoppel, from arguing that the motion for clarification was a final judgment because he objected successfully to the plaintiff's appeal to the Appellate Court by arguing that the motion for clarification is *not* a final judgment.

The defendant responds that the plaintiff's claims constitute the type of relitigation that res judicata and collateral estoppel are intended to prevent. Specifically, the defendant argues that, because the plaintiff's claims arise out of her interpretation of the agreement, which was submitted to the dissolution court and incorporated into its judgment, her current action does not fall within the exception to res judicata established in *Delahunty*. The defendant also argues that collateral estoppel bars the plaintiff's claims because the enforceability of the agreement, which included a determination of whether the agreement is unambiguous, had been litigated fully at the dissolution proceeding, and that the meaning of personal injury cases was litigated fully at the hearing on the motion for clarification. The defendant further argues that the doctrine of judicial estoppel is inapplicable because he is *not* arguing that the ruling on the motion for clarification is a final judgment. Rather, he is arguing that the trial court's order in the dissolution action simply clarified the dissolution judgment, which *is* a final judgment. We conclude that the terms of the agreement were fully litigated in the dissolution action. Moreover, the plaintiff stipulated and the court found that there was no ambiguity in the other terms of the agreement. The plaintiff actually litigated several terms

of the agreement, including provisions concerning the division of fees as well as whether the provision stating that the plaintiff and the defendant each had sufficient knowledge of the other's finances was correct. The plaintiff certainly had the opportunity to litigate the parameters of the phrase "personal injury cases" during the trial on the dissolution action if she chose to do so, but instead she acknowledged that the agreement, in other respects, was not ambiguous. Accordingly, the doctrine of res judicata applies.

The standard of review of motions for summary judgment is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Sokaitis* v. *Bakaysa*, 293 Conn. 17, 21–22, 975 A.2d 51 (2009). Additionally, the applicability of res judicata and collateral estoppel presents a question of law over which we employ plenary review. *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 601, 922 A.2d 1073 (2007).

Although res judicata and collateral estoppel often appear to merge into one another in practice, analyti-

cally they are regarded as distinct. We begin our analysis with the doctrine of res judicata. Because fraud is an exception to res judicata; id., 600; we consider its application to the plaintiff's allegations of breach of contract, breach of fiduciary duties and conversion only.

The doctrine of res judicata provides that "[a] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties . . . upon the same claim or demand." (Internal quotation marks omitted.) *Gaynor* v. *Payne*, 261 Conn. 585, 595–96, 804 A.2d 170 (2002). It "is fully applicable to judgments and decrees entered in an action for a divorce . . . ." (Internal quotation marks omitted.) *Loughlin* v. *Loughlin*, 280 Conn. 632, 645, 910 A.2d 963 (2006), quoting 24 Am. Jur. 2d 572–73, Divorce and Separation § 411 (1998). Res judicata "prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Under claim preclusion analysis, *a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction,* or series of connected transactions, out of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action *which were actually made or might have been made.*" (Citations omitted; emphasis altered; internal quotation marks omitted.) *LaSalla* v. *Doctor's Associates, Inc.,* 278 Conn. 578, 590, 898 A.2d 803 (2006). "[T]he essential concept of the modern rule of claim preclusion is that a judgment against [the] plaintiff is preclusive not simply when it is 'on the merits' but when the procedure in the first action afforded [the] plaintiff a fair opportunity to get to the merits." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.15, p. 618. Stated another way, res judicata is "based on the public policy that a party should not be able to relitigate a matter which it already

has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, *he may be barred from future actions on matters not raised in the prior proceeding*." (Emphasis added; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 192–93, 680 A.2d 1243 (1996).

"Because [res judicata and collateral estoppel] are judicially created rules of reason that are enforced on public policy grounds; *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 127, 728 A.2d 1063 (1999); we have observed that whether to apply either doctrine in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 601.

"The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . . We review the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters pre-

cluded necessarily depends on what has occurred in the former adjudication." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 423, 752 A.2d 509 (2000).

This court has adopted a transactional test for determining whether an action involves the same claim as a prior action such that it triggers the doctrine of res judicata. *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 604. Put simply, we inquire whether the prior and present actions stem from the same transaction. We have looked to 1 Restatement (Second), Judgments (1982), for guidance as to the transactional test: "[T]he claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. [Id., § 24, p. 196]. . . . [The doctrine] applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action. [Id., § 25, p. 209.]" (Internal quotation marks omitted.) *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 364–65, 511 A.2d 333 (1986). In implementing this test, this court has considered the "group of facts which is claimed to have brought about an unlawful injury to the plaintiff" and has noted that "[e]ven though a single group of facts may give rise to rights for several different

kinds of relief, it is still a single cause of action." (Internal quotation marks omitted.) Id., 365.

Accordingly, we first examine the claim presented in the dissolution action because "the scope of matters precluded [in the subsequent action] necessarily depends on what has occurred in the former adjudication." (Internal quotation marks omitted.) *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 873, 675 A.2d 441 (1996). We then compare the complaint in the present action with the pleadings and judgment in the dissolution action. Id. In the dissolution action, the plaintiff claimed "fair division of property and debts as well as alimony." The plaintiff, by choice, combined her claims for dissolution of the marriage and dissolution of the law firm. Thus, the trial court had to determine the equitable distribution of the marital estate, including assets related to the law firm, which necessitated a consideration of what each spouse was entitled to pursuant to the agreement. See, e.g., *Greco* v. *Greco*, 275 Conn. 348, 355, 880 A.2d 872 (2005) ("the paramount purpose of a property division pursuant to a dissolution proceeding . . . is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution" [internal quotation marks omitted]).

By comparison, the present action is based on the contention that the defendant is withholding funds to which the plaintiff is entitled pursuant to the agreement. The crux of the plaintiff's claim is her assertion that the phrase "personal injury cases" in the agreement includes workers' compensation cases and that, therefore, she is entitled to an additional portion of the marital estate. Consequently, the genesis of the transaction that gave rise to the plaintiff's current claim is the same as the matter intrinsic to the dissolution action: the fair division of the property pursuant to the agreement.

Stated another way, in the dissolution action, the court was required to consider whether the division of the marital estate pursuant to the agreement was fair and reasonable. In the present action, the plaintiff is asking the court to construe a particular phrase in the agreement. Because, under the doctrine of res judicata, "a claim—[or] cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction"; (internal quotation marks omitted) *LaSalla* v. *Doctor's Associates, Inc.*, supra, 278 Conn. 590; the present action seeks a remedy against the defendant with regard to a claim that the plaintiff had made previously, namely, that she was entitled to a certain portion of the marital estate, which included the assets of the parties' law firm. That her current claim is more specific, namely, that she is entitled to a certain portion of the proceeds from the defendant's workers' compensation cases, does not preclude the application of res judicata because both actions arise from the same transaction.

For the purposes of the present case in particular, it is significant that the doctrine of res judicata provides that "[a] judgment is final not only as to every matter which was offered to sustain the claim, *but also as to any other admissible matter which might have been offered for that purpose.* . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; emphasis added; internal quotation marks omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 589. Moreover, "a final decree of divorce is res judicata *with respect to all issues which were, or could have been, litigated in the proceeding.*" (Emphasis added; internal quotation marks omitted.) *Loughlin* v. *Loughlin*, supra, 280 Conn. 645, quoting 24 Am. Jur. 2d 572–73, supra, § 411. "Although we have

recognized that res judicata does not require all issues between spouses to be litigated in the dissolution proceeding; *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, [598] (exception for tort action); those issues that are litigated in a dissolution proceeding generally are precluded from subsequently being relitigated." (Internal quotation marks omitted.) *Loughlin* v. *Loughlin*, supra, 646.

Thus, although parties are not *required* to resolve all disputes during a dissolution proceeding, when a party had the opportunity to raise the claim and the dissolution proceeding provided the proper forum for the resolution of that claim, res judicata may bar litigation of a subsequent action. See id. In the present dissolution action, the plaintiff litigated the meaning of several terms of the agreement and had sufficient opportunity to litigate the definition of any of the terms in the agreement that she had drafted and revised several times.[11] The defendant had provided the plaintiff with a list of active personal injury cases as of November, 1999, as well as copies of the law firm's account statements from August to December, 1999. She, therefore, was on notice of any of the facts that would underlie her claim of ambiguity.[12] The plaintiff could have litigated the parameters of the phrase "personal injury cases" during the trial on the dissolution of marriage

[11] Therefore, the plaintiff's claim that the definition of "personal injury cases" was not actually litigated is without avail.

[12] The court in the dissolution action noted that the plaintiff had drafted the agreement and had subsequently "changed and revised [it] . . . between seven and ten times." The court also rejected the plaintiff's claims that she did not have knowledge of the defendant's assets, stating "the plaintiff herself compiled a list of the parties' accounts including account numbers and balances which she had available to her when she drafted the agreement. . . . [T]he plaintiff also filed an amended federal tax return with the defendant for the year 1998 . . . . Therefore [the plaintiff] was aware of the parties' assets as well as the [law] firm's income."

action and, accordingly, res judicata bars her present action with regard to her tort and contract claims.[13]

We arrive at this conclusion with due consideration of the public policy behind res judicata. As we have noted, this court has identified the purposes of res judicata as promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties. *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 601. These are balanced against "the competing interest of the plaintiff in the vindication of a just claim." (Internal quotation marks omitted.) Id. Indeed, we have recognized that the application of res

---

[13] The dissent argues that res judicata does not apply in the present case because the plaintiff's current action arises out of a material operative fact that occurred after the completion of the dissolution proceeding. In our view, however, the plaintiff's allegation that she discovered that she and the defendant had different definitions of the phrase "personal injury cases" after the dissolution proceeding simply does not constitute a material operative fact that would create a new transaction for the purposes of res judicata. See 1 Restatement (Second), supra, § 24 (f), p. 203. In fact, there were *no* material facts occurring after the dissolution judgment. All of the relevant facts had occurred or were known or easily discoverable to the plaintiff at the time of the dissolution hearing. The case of *Sotavento Corp.* v. *Coastal Pallet Corp.*, 102 Conn. App. 828, 836, 927 A.2d 351 (2007), relied upon by the dissent is unavailing because in that case the defendant directors in the second action were not parties in their individual capacities in the first action. Therefore, res judicata did not properly apply. See *Gaynor* v. *Payne*, supra, 261 Conn. 595–96 (res judicata provides that "final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties . . . upon the same claim or demand" [internal quotation marks omitted]).

Moreover, the public policy underlying the doctrine of res judicata counsels against the dissent's approach. The argument espoused by the dissent would substantially weaken res judicata as applied to contract actions in any case where a party could claim that it misunderstood a contract term. Such a result is contrary to the purpose of res judicata, which seeks "to promote judicial economy by minimizing repetitive litigation . . . to prevent inconsistent judgments which undermine the integrity of the judicial system; and . . . to provide repose by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 843, 988 A.2d 229 (2009).

judicata can yield harsh results, and, as a result, have stated that the doctrine "should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 591. Although, the specific issue in the present case was not considered by the court during the trial on the plaintiff's dissolution of marriage action, nothing in the nature of that proceeding prevented the plaintiff from litigating the meaning of personal injury cases. In other words, the plaintiff was not deprived of the *opportunity* to litigate her claim. See *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 322–23, 684 A.2d 1173 (1996) ("the principle of res judicata is based on the public policy that a party should not be allowed to relitigate a matter which it already has had an *opportunity* to litigate" [emphasis in original; internal quotation marks omitted]). The plaintiff also had an opportunity, at the hearing on the motion for clarification, to present evidence that "personal injury cases" included workers' compensation cases.[14] Moreover, she is not precluded from bringing a motion to open on the basis of fraud, which she alleges in her

[14] The dissent argues that because "motions for clarification are permitted precisely because of the fact that the parties to [a dissolution] agreement may interpret it differently in light of future events . . . [and] parties to a dissolution action routinely bring motions for contempt, often filed years after the dissolution judgment has been rendered, claiming that the other party has violated the terms of the judgment by failing to turn over property or money allegedly due thereunder," res judicata does not bar subsequent litigation of terms of the dissolution agreement in the present case. This argument fails to appreciate the significant difference between filing a motion for clarification, which was permissibly done in the present case, or filing a motion for contempt, which the plaintiff certainly could have done—neither of which implicates the doctrine of res judicata—and the subsequent commencement of an entirely new action.

complaint in the present case.[15] Because the plaintiff is not completely foreclosed from vindication of her claim and because she already has had a hearing on the meaning of personal injury cases, the principles behind res judicata support its application in the present case.[16]

The plaintiff argues that our decision in *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 592, necessitates the conclusion that res judicata does not bar her claims. We disagree. As the trial court noted in its memorandum of decision, in *Delahunty*, we created an exception to the rule of res judicata by concluding that the doctrine did not preclude the plaintiff's tort action against her former spouse even though the alleged conduct occurred during the marriage and she had made her claims at the dissolution proceeding. Id., 586, 592. After considering the purposes of res judicata, we concluded that the doctrine should not require parties to bring tort actions based on claims that arise during a marriage in the dissolution proceeding and that "because there are significant differences between

---

[15] This court has recognized that "[a] marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005); *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 778, 802 A.2d 44 (2002) ("the *only* remedy available to [a] defrauded party in [the context of a marital dissolution] is to have the court open and reconsider the judgment as a matter of equity" [emphasis added]). We offer no opinion as to whether the plaintiff would be successful in such an action.

[16] Because we conclude that the plaintiff's claims are barred by the doctrine of res judicata on the ground that she could have brought them during the trial on the plaintiff's dissolution of marriage action, we need not consider her argument that the defendant should be precluded, by the doctrine of judicial estoppel, from arguing that the motion for clarification was not a final judgment. The defendant's arguments regarding the motion for clarification are irrelevant to our conclusion even if they are inconsistent with his position in his motion to dismiss the plaintiff's appeal to the Appellate Court. Similarly, we need not address the plaintiff's argument that the motion for clarification was improper because it was, in substance, a motion for modification.

a tort action and a dissolution action, the maintenance of a separate tort action will not subject the courts and the defendant to the type of piecemeal litigation that the doctrine was intended to prevent." Id., 592. Specifically, we relied on the fact that "[a] tort action, the purpose of which is to redress a legal wrong by an award of damages, is not based on the same underlying claim as an action for dissolution, the purpose of which is to sever the marital relationship . . . and *to divide the marital estate*." (Emphasis added.) Id. This reasoning is inapplicable in the present case because although the plaintiff's claim sounds in tort and contract, it is, in substance, a claim regarding the meaning of a phrase in the agreement.[17] Additionally, the crux of the plaintiff's claim is an assertion that she is entitled to an additional portion of the marital estate pursuant to the agreement—a contract they had entered into to dissolve their relationships—not to damages as traditionally conceived in tort actions. To conclude that the plaintiff may avoid res judicata by characterizing her claim as a tort claim would be to elevate form over substance, which we will not do. See, e.g., *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 422, 797 A.2d 494 (2002) (declining to conclude court was deprived of jurisdiction because plaintiff brought action under statute rather than as common-law action in equity).

Moreover, unlike *Delahunty*, in which we noted that the dissolution proceeding was not the proper forum for resolution of the tort action, the meaning of terms in the agreement and the division of the marital estate were squarely—and properly—at issue in the dissolution proceeding. See *Delahunty* v. *Massachusetts*

---

[17] More specifically, count one of the plaintiff's complaint sounds in contract, counts two and four of the plaintiff's complaint sound in tort and counts three and five of the plaintiff's complaint allege fraud and statutory theft. Significantly, however, each of these claims stem from the plaintiff's interpretation of the agreement.

*Mutual Life Ins. Co.*, supra, 236 Conn. 592–93. In the present case, the plaintiff must establish the definition of a specific phrase in the agreement in order to succeed in her claim. This burden is not separate and distinct from the issues at the dissolution proceeding and therefore presents "the duplication that the doctrine of res judicata was aimed at preventing." Id., 593. Thus, we cannot conclude, as we did in *Delahunty*, that the differences in the two actions would not subject courts to the type of piecemeal litigation that res judicata seeks to avoid. See id., 592. In this instance quite the opposite is true: holding that a party to a divorce could litigate the terms of the dissolution judgment years after the dissolution proceeding by bringing his or her cause of action in tort is precisely the burden on the court system and the defendant that res judicata was designed to prevent.

To be clear, we are not contravening our conclusion in *Delahunty* that res judicata does not require tort actions based on conduct that occurred during the marriage to be litigated in the dissolution proceeding. See id., 592–93. Rather, we conclude that, in the present case, the considerations underlying the doctrine of res judicata support the conclusion that the doctrine precludes the plaintiff's subsequent litigation of the meaning of the terms in the agreement. Res judicata is, by its very nature, extremely fact specific in application. Thus, our application of res judicata and *Delahunty* to subsequent actions between parties in a dissolution proceeding necessarily turns on the precise nature and substance of the second action.

Having concluded that res judicata precludes the plaintiff's allegations of breach of contract, breach of fiduciary duties and conversion, we now consider whether the court properly rendered summary judgment in favor of the defendant as to the plaintiff's allega-

tions of fraud and statutory theft.[18] The plaintiff argues that res judicata is inapplicable to her current claims because a genuine issue of material fact remains as to whether the defendant fraudulently concealed the workers' compensation cases during the divorce proceedings.[19] We disagree. Res judicata does not apply to judgments obtained through fraud or collusion. See *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 600 ("[t]he doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion . . . is conclusive of causes of action and of facts or issues thereby litigated as to the parties . . . in all other actions"). A party may not, however, circumvent the doctrine by merely *alleging* fraud. Although the plaintiff alleges in her complaint that the defendant made fraudulent representations relating to his disclosure of contingency fee cases during the dissolution

[18] Statutory theft pursuant to § 52-564; see footnote 8 of this opinion; is synonymous with larceny under General Statutes § 53a-119, which provides in relevant part that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." See *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 771, 905 A.2d 623 (2006). Section 53a-119 includes larceny by various fraudulent methods. See, e.g., General Statutes § 53a-119 (2) ("[a] person obtains property by false pretenses when . . . he obtains from another any property, with intent to defraud him"); General Statutes § 53a-119 (3) ("[a] person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another"). Therefore, we consider these allegations together.

[19] The plaintiff argues that res judicata does not apply to her present action because the defendant fraudulently failed to disclose the existence of workers' compensation cases in violation of his fiduciary duty pursuant to *Billington* v. *Billington*, 220 Conn. 212, 220–21, 595 A.2d 1377 (1991). Notwithstanding the paramount importance of full and frank disclosure in dissolution proceedings, this case is not about fraudulent disclosure. In the dissolution action, the court expressly found that the plaintiff was "aware of the parties' assets as well as the firm's income." In the present case, the gravamen of the plaintiff's complaint is the proper interpretation of a term in the agreement. As we have noted, assuming the facts would support it, she would not be foreclosed from bringing a motion to open on the basis of fraud. See footnote 15 of this opinion.

action, the plaintiff has not offered any evidence to support her claim. The plaintiff is, of course, correct in her assertion that when deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Sokaitis* v. *Bakaysa*, supra, 293 Conn. 22. It is equally true, however, that "a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Gold* v. *East Haddam*, 290 Conn. 668, 677–78, 966 A.2d 684 (2009). This requirement "ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial." (Internal quotation marks omitted.) Id., 678; *Farrell* v. *Farrell*, 182 Conn. 34, 39, 438 A.2d 415 (1980) ("the whole summary judgment procedure would be defeated if, without any showing of evidence, a case could be forced to trial by a mere assertion that an issue exists").

The plaintiff's affidavit in support of her objection to the defendant's motion for summary judgment is devoid of any evidence relating to her allegations of fraud. Rather, the plaintiff merely asserts that when she entered into the agreement she "considered any matter with a contingency fee arrangement and involving injury to be a 'personal injury' case, as referred to in the agreement . . . ." Moreover, she did not argue, in her memorandum in opposition to the defendant's motion for summary judgment, that there was a genuine issue of material fact as to whether the defendant had perpetrated fraud. Instead, she argued that the genuine issue

of material fact in dispute was "whether workers' compensation cases are considered contingency fee personal injury cases under the agreement." In the present case, therefore, we conclude that the plaintiff's allegations of fraud and statutory theft do not raise a genuine issue of material fact and, accordingly, the mere allegation of fraud in a subsequent action is insufficient to trigger the fraud exception to res judicata.

Accordingly, we conclude that the trial court properly rendered summary judgment for the defendant on the ground that the present action is barred by the doctrine of res judicata.[20]

---

[20] Because the plaintiff is precluded by res judicata from bringing her action, we do not consider whether the doctrine of collateral estoppel would similarly bar the plaintiff's claims. Therefore, we do not address the plaintiff's argument that her claim that "personal injury cases" encompasses workers' compensation cases was not fully litigated because the motion for clarification was not subject to appellate review. Although res judicata and collateral estoppel are related, they are distinguishable in application. "Under the doctrine of res judicata, a final judgment . . . is an absolute bar to a subsequent action, between the same parties . . . upon the same claim." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999). As we have discussed, res judicata also "prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made." (Internal quotation marks omitted.) *LaSalla* v. *Doctor's Associates, Inc.*, supra, 278 Conn. 590. "In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties . . . upon a different claim." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 373–74. Accordingly, we have held that unless the unsuccessful party in the prior litigation had the opportunity to seek appellate review, that issue has not been "fully litigated" for the purposes of collateral estoppel. See *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 268, 659 A.2d 148 (1995) ("we will not apply collateral estoppel, where it would otherwise be applicable, if the party who was unsuccessful in the initial action is barred, as a matter of law, from obtaining appellate review of the initial action"). We have not applied this exception previously to res judicata, and decline to do so now. In any event, the final judgment that bars the plaintiff's complaint, namely, the judgment of dissolution, *was* subject to appellate review. The fact that the plaintiff chose not to avail herself of the opportunity to appeal does not prevent the application of res judicata to her current claims.

The judgment is affirmed.

In this opinion ROGERS, C. J., and NORCOTT, KATZ, VERTEFEUILLE and ZARELLA, Js., concurred.

PALMER, J., dissenting. I disagree with the majority's conclusion that the plaintiff, Claudia Weiss, is barred by the doctrine of res judicata from litigating her claim in the present case because she "could have" litigated the meaning of the term "personal injury cases," which is contained in the parties' marital dissolution agreement, in the parties' prior dissolution action but failed to do so. In so concluding, the majority misapplies the doctrine of res judicata and, as a result, reaches a result that is both contrary to settled law and manifestly unfair to the plaintiff. It also is quite clear that the doctrine of collateral estoppel does not bar the plaintiff from proceeding with her claim in the present action. I therefore would reverse the trial court's decision to grant summary judgment in favor of the defendant, Martin T. Weiss.

" 'Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit.' " *Rocco* v. *Garrison*, 268 Conn. 541, 554, 848 A.2d 352 (2004). " 'Both doctrines protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation . . . and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.' " Id. " 'Res judicata, or claim preclusion, is [however] distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judg-

ment, when rendered on the merits, is an absolute bar to a subsequent action . . . between the same parties or those in privity with them, upon the same claim. . . . In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim.' " Id., 554–55. " 'An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action.' " Id., 555. " 'To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case.' " Id.

It appears that the trial court, *Booth, J.*,[1] granted the defendant's motion for summary judgment in reliance on the doctrines of res judicata and collateral estoppel. With respect to the applicability of the doctrine of res judicata, the trial court explained in relevant part that the "dissolution judgment [of the court, *Scholl, J.*] reviews the [dissolution] agreement thoroughly, and in particular, addresses specific terms used therein. The final judgment, combined with the . . . oral decision on the defendant's motion for clarification, makes clear that the matter of the meaning of [the language at issue, namely, 'personal injury cases,' in] the [dissolution] agreement *has been decided.* To allow the plaintiff's current claims to proceed would undermine the primary purposes of the doctrine of res judicata: promotion of judicial economy, prevention of inconsistent judgments

---

[1] Hereinafter, all references to the trial court are to the court, *Booth, J.*, unless otherwise indicated.

and promotion of finality of judgments." (Emphasis added.) With respect to the applicability of the doctrine of collateral estoppel, the trial court observed that "[t]he issue involved in the plaintiff's present action is the meaning of ['personal injury cases' in] the [dissolution] agreement. In both the dissolution judgment and the subsequent order of clarification, the court *decided this issue*. Therefore, the plaintiff's present action is barred by the doctrine of collateral estoppel." (Emphasis added.)

The trial court's rationale for applying each of the two doctrines is the same: the meaning of the term "personal injury cases" was *actually litigated and decided* in the dissolution action, including the litigation of the defendant's motion for clarification. Thus, with respect to the trial court's application of the doctrine of res judicata, the court applied that prong of the test pursuant to which a claim will be barred if that claim actually has been raised and decided in a prior action.

By contrast, the majority decides the case under the prong of the res judicata test pursuant to which preclusive effect is given to claims that "could have" been raised in a prior action because they arose out of the same transaction as the prior action. Specifically, the majority states that, "[i]n the present dissolution action, the plaintiff . . . had *sufficient opportunity* to litigate the definition of . . . the terms in the [dissolution] agreement . . . ." (Emphasis added.) The majority relies on this prong of the test presumably because, as the majority acknowledges, "the specific issue in the present case *was not* considered by the court during the trial on the plaintiff's dissolution . . . action . . . ." (Emphasis added.) For the reasons that follow, I do not agree with the conclusion of either the majority, to which I turn first, or the trial court.

Before addressing the majority opinion, I note that several additional principles underlying the doctrine

of res judicata—the doctrine on which the majority's decision is predicated—are relevant to my analysis. "[This court has] adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, [the court] compare[s] the complaint in the second action with the pleadings and the judgment in the earlier action [to determine whether the claims in the second action arose out of the same transaction as the earlier action and, therefore, should have been brought in that earlier action]." (Citations omitted; internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 189–90, 629 A.2d 1116 (1993). It is well established that "[m]aterial operative facts occurring *after* the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." (Emphasis added; internal quotation marks omitted.) *Marone* v. *Waterbury*, 244 Conn. 1, 15 n.14, 707 A.2d 725 (1998); see also *Zwerg* v. *Zwerg*, 254 Miss. 8, 19, 179 So. 2d 821 (1965) ("[t]he estoppel of a judgment extends only to

the facts and conditions as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the parties respectively, [the] issues are no longer the same, and hence the former judgment cannot be pleaded in bar in the subsequent action" [internal quotation marks omitted]); *Creech* v. *Addington*, 281 S.W.3d 363, 381 (Tenn. 2009) ("[t]he doctrine of res judicata extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same question between the same parties [when] in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants" [internal quotation marks omitted]). "It [also] is well established that the party asserting the affirmative defense of res judicata bears the burden of establishing its applicability." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, supra, 195.

Applying the foregoing principles to the present case, I conclude that it is readily apparent that the plaintiff's complaint in the present action alleges a cause of action different from that alleged in the dissolution action because the former is predicated on facts that arose *after judgment had been rendered in the dissolution action,* namely, the defendant's alleged breach of the parties' dissolution agreement on the basis of the defendant's failure to pay sums allegedly due thereunder. In an affidavit filed in opposition to the defendant's motion for summary judgment, the plaintiff attests to the fact that, at the time of the dissolution action, she believed that the term " 'personal injury cases' . . . would necessarily encompass workers' compensation cases." She further stated that, "more than one year after the [disso-

lution] judgment entered, [she] learned that the [d]efendant had approximately [ninety] workers' compensation cases active as of November [of] 1999 that were not included in the [d]efendant's list of active files for which [she] was to be paid a one third portion of the net fees . . . ." She also stated that, "[d]espite demand on him to do so, the [d]efendant has consistently refused to pay . . . one third of the fees . . . ."[2] The reason that the doctrine of res judicata does not bar the plaintiff's claim is because the plaintiff's complaint alleges a breach of contract predicated on facts and circumstances that either were unknown to the plaintiff at the time of the dissolution action or that arose after judgment had been rendered in that action. See, e.g., *Morrison* v. *Morrison,* 284 Ga. 112, 116, 663 S.E.2d 714 (2008) ("[when] . . . some of the operative facts necessary to the causes of action are different in the two cases, the later [action] is not upon the same cause as the former . . . although the subject matter may be the same . . . and even though the causes arose out of the same transaction" [internal quotation marks omitted]); *Stone* v. *Stone,* 295 Ga. App. 783, 785–86, 673 S.E.2d 283 (2009) ("[When] a settlement agreement is incorporated into a final decree of divorce, [an action] seeking damages for the violation of its terms . . . may be maintained . . . [because the] breach allegation was not—and could not have been—adjudicated in the divorce proceeding, which *concluded* when the parties settled the case and the trial court incorporated that settlement into the final divorce decree. The trial court, therefore, erred in dismissing the [contract action] as res judicata." [Emphasis in original; internal quotation marks omitted.]), cert. denied, Docket No. S09C0852, 2009 Ga. LEXIS 263 (Ga. April 28, 2009); *Wilbanks* v. *Dolberry,* 177 Ga. App. 644, 644–45, 340 S.E.2d 275

---

[2] The defendant has not challenged these assertions, and I know of no reason why they should not be credited.

(1986) (doctrine of res judicata did not bar former husband's action for breach of settlement agreement arising from divorce); *Brouillette* v. *Brouillette*, 18 So. 3d 756, 758–59 (La. App. 2009) (action for breach of settlement agreement not barred by doctrine of res judicata because issue of former husband's failure to comply with terms of agreement obviously was not subject of divorce proceeding).

Put differently, it reasonably cannot be stated that the plaintiff "could have" litigated the meaning of the term "personal injury cases" in the dissolution action itself because, as the plaintiff stated in her affidavit, she believed that that term included workers' compensation cases, and *she had no reason to believe that the defendant had a different understanding of the meaning of that term.* Thus, although the plaintiff *theoretically* could have litigated the matter in the dissolution action, she had no reason to do so because she neither knew nor should have known that the meaning of the term "personal injury cases" was a matter in dispute until she was apprised of that fact when the defendant refused to pay her a percentage of the fees that he had earned from his workers' compensation cases. It is well established that a party is permitted to bring a subsequent action arising out of the same transaction as a prior action when, as in the present case, the party alleges that she was unaware, at the time of the prior action, of the facts giving rise to the subsequent action. See, e.g., *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 717, 627 A.2d 324 (1993) ("[t]he . . . requirement that an issue be 'actually litigated' embodies the important concern *that the parties be cognizant of and interested in an issue before they are precluded from litigating it*" [emphasis added]); *Sotavento Corp.* v. *Coastal Pallet Corp.*, 102 Conn. App. 828, 836–37, 927 A.2d 351 (2007) (declining to apply doctrine of res judicata when plaintiff was unaware, during pendency of first action, of

facts giving rise to second action).[3] This is true even when the facts giving rise to the second action were discoverable by the party at the time of the first action but were unknown to that party. See *Sotavento Corp.* v. *Coastal Pallet Corp.*, supra, 837 and n.4; see also, e.g., *Creech* v. *Addington*, supra, 281 S.W.3d 381 ("[t]he doctrine of res judicata extends only to the facts in issue as they existed [and were known to the parties] at the time the judgment was rendered, and does not prevent a re-examination of the same question between the same parties [when] in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants" [internal quotation marks omitted]).

The flaw in the majority's analysis is reflected in the following language in its opinion: "Although . . . the specific issue in the present case was not considered by the court during the trial on the plaintiff's dissolution . . . action, nothing in the nature of that proceeding prevented the plaintiff from litigating the meaning of personal injury cases. In other words, the plaintiff was not deprived of the *opportunity* to litigate her claim." (Emphasis in original.) The majority misses the point entirely in asserting that there was nothing that "prevented the plaintiff from litigating the meaning of" the term "personal injury cases" because the issue is not whether she had been *prevented* from litigating that issue but, rather, whether she *had any reason or incentive to litigate it.* Because the plaintiff did not know, and had no reason to know, that, at the time of the

---

[3] But cf. *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 607, 922 A.2d 1073 (2007) (trial court properly granted defendant's motion for summary judgment on res judicata grounds when trial court found that facts underlying second action "certainly [were] known" to plaintiffs at time of first action); *Wright* v. *Zielinski*, 824 A.2d 494, 497–98 (R.I. 2003) (husband's postdissolution breach of contract claim barred by doctrine of res judicata because husband was fully aware of all facts underlying such claim at time of dissolution proceeding).

dissolution judgment, the defendant had a different understanding of the meaning of the term "personal injury cases," namely, that the term did not include workers' compensation cases, the plaintiff had no reason to litigate that issue until she learned, more than one year later, of the defendant's different view of the term's meaning. For precisely the same reason, the majority's assertion that the plaintiff was "not deprived of the opportunity to litigate" the meaning of "personal injury cases" also is beside the point. The plaintiff had no "opportunity" to litigate the issue for res judicata purposes because she had no reason to know that she and the defendant disagreed over the meaning of the term, and, therefore, the plaintiff had no cause to litigate the term's meaning in the dissolution action. Simply stated, in concluding that the plaintiff is barred in the present action from litigating the issue of whether the term "personal injury cases" includes workers' compensation cases, the majority penalizes the plaintiff for not being clairvoyant, that is, for not knowing, at the time of the dissolution action, that the defendant had an understanding of the term that was different from the plaintiff's understanding of that term. The majority's unprecedented approach works a serious and manifest injustice on the plaintiff, who now is barred from litigating a claim that she never before raised because she had no reason to do so.

The majority nevertheless asserts that, "[i]n [its] view . . . the plaintiff's allegation that she discovered that she and the defendant had different definitions of the phrase 'personal injury cases' after the dissolution proceeding simply does not constitute a material operative fact that would create a new transaction for the purposes of res judicata. . . . All of the relevant facts had occurred or were known or easily discoverable to the plaintiff at the time of the dissolution hearing." (Citation omitted.) Footnote 13 of the majority opinion. The

majority, however, provides no explanation as to *why*, in its view, the fact that the plaintiff did not discover that she and the defendant had a different understanding of the term "personal injury cases" until after the dissolution proceeding is *not* material for res judicata purposes. Contrary to the majority's bald assertion, that fact, which the defendant does not challenge, is *highly material* to the issue presented because, in light of that fact, the plaintiff had absolutely no reason to litigate the meaning of the term "personal injury cases" in the dissolution action. The majority also fails to explain why the plaintiff should have known or discovered that she and the defendant had a disagreement over the meaning of the term "personal injury cases" prior to the dissolution judgment. Again, the majority's conclusion is unsupported by any explanation. I submit that the majority declines to provide an explanation for its conclusion because there is no such explanation. In other words, there is nothing in the record, or anywhere else, to substantiate the majority's conclusion that the plaintiff was required to litigate the issue of the meaning of the term "personal injury cases" in the dissolution action, or otherwise to be barred from doing so thereafter, even though she had no knowledge or reason to know of the existence of any dispute concerning the meaning of that term at the time of the dissolution action.[4]

The majority attempts to satisfy the requirements of the transactional test for res judicata by asserting that the plaintiff, in fact, was aware of the operative facts giving rise to her breach of contract claim at the time of the dissolution action. Specifically, the majority states that the plaintiff "was on notice of any of the

---

[4] The majority also asserts that "the public policy underlying the doctrine of res judicata counsels against [my] approach." Footnote 13 of the majority opinion. Once again, however, the majority's assertion is unsupported by any explanation.

facts that would underlie her claim of ambiguity." The majority's support for this assertion, however, is wholly unpersuasive. Indeed, the defendant himself, who has the burden of proof on the issue, does not make the argument that the majority makes, *or any other argument* for that matter, with respect to whether the plaintiff was aware, at the time of the dissolution action, of the facts underlying her breach of contract claim.[5] Specifically, the majority relies on the fact that "[t]he defendant had provided the plaintiff with a list of active personal injury cases as of November, 1999, as well as copies of the law firm's account statements from August to December, 1999." This list of cases, according to the majority, should have alerted the plaintiff to the fact that the defendant did not possess the same understanding of the phrase "personal injury cases" because the list contained no workers' compensation cases. An examination of the list, however, reveals sixty-nine "pending," "in suit," or "settled" cases identified by name only, not by docket number.[6] The majority does not explain how this list of cases would have put the plaintiff on notice of the fact that the workers' compensation cases were *not* included among them. Indeed, it is the plaintiff's contention that she understood the list to be *inclusive* of the workers' compensation cases. There is absolutely nothing about the list that would have alerted her otherwise. To the contrary, many of the defendants on the list are businesses that employ workers, a fact that reasonably would have led the plaintiff to believe that the list comported with her

[5] Indeed, the defendant's sole argument with respect to the applicability of the doctrine of res judicata is that the plaintiff's claim that the meaning of the term "personal injury cases" includes workers' compensation cases "could have been brought during the nine day [dissolution] trial." The defendant *does not* argue that the plaintiff was aware of the facts underlying her breach of contract claim at the time of the dissolution proceeding.

[6] For example, the first case on the list is *Adams* v. *Waste Management of Connecticut, Inc.*, with a status of "pending."

understanding of the parties' dissolution agreement. The majority's contention, therefore, that the list provided the plaintiff with notice of the facts underlying her breach of contract claim is entirely without merit. Even less persuasive is the majority's contention that the law firm's bank account statements from August through December, 1999, provided the plaintiff with notice that she and the defendant possessed different understandings of the phrase "personal injury cases" such that the plaintiff was required to raise that issue during the dissolution proceeding. The majority does not explain how those statements, which presumably reflect cash deposits, withdrawals and account balances, provided notice to the plaintiff of the ambiguity in the parties' dissolution agreement. Because the list of cases and account statements are the only evidence on which the majority relies in reaching its conclusion, it is impossible to see how the majority rationally can conclude that the defendant has met his burden of establishing that the doctrine of res judicata bars the present action.

The majority also argues that, during the dissolution proceeding, "[t]he plaintiff actually litigated [the meaning of] several terms [in] the [dissolution] agreement . . . ."[7] The majority contends, therefore, that "[t]he plaintiff certainly had the opportunity to litigate the parameters of the phrase 'personal injury cases' during the [dissolution] trial . . . if she chose to do so, but instead she acknowledged that the agreement, in other

---

[7] Specifically, the plaintiff claimed that the term "of counsel" was not defined in the dissolution agreement, that the provisions of the agreement regarding the division of fees did not adequately describe whether the plaintiff was to receive her share from the net or the gross fees, and that the provision of the agreement stating that the parties had "sufficient understanding" of each other's finances was vague. With respect to the latter claim, the plaintiff argued that the language was misleading because she did not believe that the defendant had been forthcoming with respect to his actual annual income.

respects, was not ambiguous." Under the prong of the doctrine of res judicata that the majority purports to apply, however, the fact that a party has had an opportunity to litigate a claim in a prior action is not dispositive; the issue is whether the plaintiff was *"cognizant of"* that claim in the prior action. (Emphasis added.) *Jackson* v. *R. G. Whipple, Inc.*, supra, 225 Conn. 717. The doctrine of res judicata is not properly applied to penalize a party for failing to bring a claim involving a dispute of which that party was unaware, regardless of whether the earlier action would have provided an opportunity to bring that claim.

Indeed, under the majority's analysis, the plaintiff was required to anticipate potential but unknown ambiguities in the dissolution agreement, or to perceive that the defendant possessed a different understanding of that agreement, simply because the plaintiff litigated the meaning of three of the terms in the agreement. The majority cites to no authority, however, and I have found none, to support the proposition that a party to an agreement, entered into in the course of a dissolution action, is required to litigate the meaning of every term of the agreement before judgment is rendered in that action in order to avoid being precluded from doing so at a later date when that party learns that the other party has violated a term of the agreement. Indeed, motions for clarification are permitted precisely because of the fact that the parties to such an agreement may interpret it differently in light of future events. Furthermore, parties to a dissolution action routinely bring motions for contempt, often filed years after the dissolution judgment has been rendered, claiming that the other party has violated the terms of the judgment by failing to turn over property or money allegedly due thereunder.[8] For all the foregoing reasons, I disagree

---

[8] In such cases, the trial court's determination of the meaning of the judgment, and any order issued in connection therewith, gives rise to an appealable final judgment. See, e.g., *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325,

with the majority that the doctrine of res judicata bars the present action because, contrary to the determination of the majority, it is unreasonable to conclude that the plaintiff was required to assert her claim during the dissolution action.[9]

329–30, 983 A.2d 293 (2009) (appeal from trial court's denial of plaintiff's motion for contempt, seeking to compel defendant to pay certain money allegedly due under parties' dissolution agreement); *Adams* v. *Adams*, 93 Conn. App. 423, 424, 430–31, 890 A.2d 575 (2006) (appeal from trial court's denial of defendant's motion for contempt on ground that plaintiff had violated financial terms of parties' dissolution agreement); *Cushman* v. *Cushman*, 93 Conn. App. 186, 189–90, 888 A.2d 156 (2006) (appeal from trial court's granting of motion for contempt on ground that plaintiff had violated financial terms of parties' dissolution agreement); *Behrns* v. *Behrns*, 80 Conn. App. 286, 292, 835 A.2d 68 (2003) (reversing trial court's denial of plaintiff's motion for contempt seeking order that defendant had violated financial terms of parties' dissolution agreement), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004); *Sheppard* v. *Sheppard*, 80 Conn. App. 202, 209, 216–17, 834 A.2d 730 (2003) (appeal on ground that trial court had misconstrued terms of parties' separation agreement).

The majority states that I fail "to appreciate the significant difference between filing a motion for clarification, which was permissibly done in the present case, or filing a motion for contempt, which the plaintiff certainly could have done—neither of which implicates the doctrine of res judicata—and the subsequent commencement of an entirely new action." Footnote 14 of the majority opinion. The majority fails, however, to explain what it characterizes as the "significant difference" between a motion for clarification and a motion for contempt, on the one hand, and the present action, on the other. In fact, there is no such "significant difference . . . ." In all three instances, a party seeking a judicial determination of the meaning of a disputed term in an agreement that is incorporated into a divorce decree is entitled to such a determination. Indeed, the majority cannot identify any meaningful difference at all between the litigation necessary for the purpose of resolving a motion for contempt, which, as I previously noted, gives rise to a right of appeal, and the litigation necessary for the purpose of resolving the plaintiff's claim in the present action.

[9] The majority also observes that the plaintiff had drafted the parties' dissolution agreement and revised it several times. To the extent that the majority purports to rely on this fact to support its conclusion that the plaintiff's claim is barred by the doctrine of res judicata, I fail to see how it has any bearing on the determination of whether the plaintiff's claim is foreclosed. There simply is no reason to presume that the plaintiff had any knowledge of the defendant's understanding of the meaning of the term "personal injury cases" merely because she had authored and revised the parties' dissolution agreement.

I turn next to the issue of whether the trial court properly determined that the present action was barred by the doctrine of collateral estoppel because the meaning of the term "personal injury cases" was fully and fairly litigated in the hearing on the defendant's motion for clarification. The plaintiff claims that the trial court's determination was improper because, among other reasons, she did not have a right to seek appellate review of the ruling on the motion for clarification. Although the majority does not directly address this claim, it acknowledges its validity in a footnote. See footnote 20 of the majority opinion ("we have held that unless the unsuccessful party in the prior litigation had the opportunity to seek appellate review, that issue has not been 'fully litigated' for the purposes of collateral estoppel").

The plaintiff's claim has merit because, for collateral estoppel to apply, "there must have been available some avenue for review of the prior ruling on the issue."[10] *Sena* v. *Commonwealth*, 417 Mass. 250, 260, 629 N.E.2d 986 (1994); accord *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 269, 659 A.2d 148 (1995); see also *Water Pollution Control Authority* v. *Keeney*, 234 Conn. 488, 494–95, 662 A.2d 124 (1995) ("relitigation of the issue in a subsequent action between the parties is not precluded [when the] party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action" [internal quotation marks omitted]); *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, supra, 269 ("it would be inequitable to impose on a party the adverse [preclusive] effects of a . . . judgment when that party was denied the opportunity for appellate review"). There is

---

[10] In reaching this conclusion, we adopted the position set forth in the Restatement (Second) of Judgments. See *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 268–69, 659 A.2d 148 (1995), citing 1 Restatement (Second), Judgments § 28 (1), p. 273 (1982).

no right of appeal from the ruling on a motion for clarification because that ruling is not deemed to be a final judgment. Cf. *In re Haley B.*, 262 Conn. 406, 412, 815 A.2d 113 (2003) ("motions for clarification or an articulation, as opposed to alteration, of the terms of [a] judgment or decision do not give rise to a new appeal period"). Indeed, in the present case, the defendant opposed the plaintiff's appeal from the ruling on the defendant's motion for clarification, and the Appellate Court dismissed that appeal, presumably because it was not filed until long after the twenty day appeal period—which began to run on the date that the dissolution judgment was rendered—had expired.

Finally, I also disagree with the trial court's conclusion that, because the plaintiff's claim has been actually litigated and decided, principles of res judicata bar the plaintiff from pursuing the present action. This prong of the doctrine of res judicata is inapplicable for the same basic reasons that the doctrine of collateral estoppel does not bar this action. In particular, it cannot be said that the meaning of the term "personal injury cases" was litigated in the dissolution action because, although that action gave rise to an appealable final judgment, as I explained previously, the plaintiff was unaware of any controversy concerning the meaning of that term, and, therefore, she had no reason to raise that issue in the dissolution action. With respect to the ruling on the motion for clarification, that ruling did not constitute a final judgment, and, for that reason, the plaintiff had no right to appeal. See, e.g., *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999) (for purposes of res judicata, *final judgment* rendered on merits is bar to subsequent action). In such circumstances, it reasonably cannot be concluded that the matter was fully and fairly litigated.[11]

_____

[11] The majority states that, although the right of appeal is a precondition to a determination that an issue has been fully and fairly litigated for purposes of the doctrine of collateral estoppel, that requirement is inapplicable to

I therefore would reverse the decision of the trial court to grant the defendant's motion for summary judgment and remand the case to the trial court for further proceedings. Accordingly, I respectfully dissent.

the doctrine of res judicata. See footnote 20 of the majority opinion. I disagree with this assertion insofar as it pertains to the prong of the doctrine of res judicata pursuant to which a claim cannot be relitigated if it has been actually litigated and decided. As I previously noted, only claims that have been litigated to a final judgment are subject to the preclusive effect of the doctrine of res judicata, and it is axiomatic that final judgments are appealable. Indeed, I can think of no reason why this court would conclude that an issue has been fully and fairly litigated for purposes of collateral estoppel but not for purposes of res judicata.

