CLOSE, JENSEN AND MILLER, P.C. *v.* FIDELITY NATIONAL TITLE INSURANCE COMPANY ET AL.
(AC 32888)

DiPentima, C. J., and Gruendel and Borden, Js.

Argued May 16—officially released July 12, 2011

*Paul H. D. Stoughton,* for the appellant (plaintiff).

*Gerald L. Garlick,* with whom, on the brief, was *Katherine E. Abel,* for the appellees (defendants).

*Opinion*

BORDEN, J. The sole issue in this appeal is whether the trial court properly applied the principles of res

judicata in rendering summary judgment for the defendants. The plaintiff, Close, Jensen & Miller, P.C. (Close), a professional land surveying and engineering firm, appeals from the summary judgment rendered in favor of the defendants, Fidelity National Title Insurance Company (Fidelity) and Commonwealth Land Title Insurance Company (Commonwealth), on the basis of res judicata. Close contends that its present claims against the defendants are not barred by res judicata. We affirm the judgment of the trial court.

Close brought this action against the defendants in seven counts: (1) breach of the duty of good faith and fair dealing; (2) and (3) unfair settlement practices in violation of General Statutes § 38a-816 et seq., and unfair trade practices in violation of General Statutes § 42-110a et seq.; (4) and (5) tortious interference with contractual or beneficial relationships; (6) bringing and conspiracy to bring a lawsuit in bad faith; and (7) intentional or negligent misrepresentation. The defendants moved for summary judgment on the basis of res judicata. The trial court, *Domnarski, J.*, granted the defendants' motion and rendered judgment for the defendants. This appeal followed.

Before addressing Close's claims on appeal, it is necessary to set out the complicated procedural history of this case. Certain historical facts are undisputed.

The buildings known as State House Square and No. 18 Temple Street (Temple Street), in Hartford, share a common boundary, namely, the northerly boundary of State House Square and the southerly boundary of Temple Street. On August 27, 2003, Close certified to Commonwealth a survey of State House Square that purported to show the correct location of State House Square and that there were no encroachments, except as shown, on the property. This survey was based on

" 'as built' " plans prepared by Close and based on information supplied to Close by the contractor. On June 18, 2004, John H. Miller, a principal in Close, certified to Fidelity a survey of Temple Street that represented that all building lines were correctly depicted on the survey and that there were no encroachments or projections on the property by adjacent buildings. Both Commonwealth and Fidelity relied on these surveys in issuing title insurance policies to the owners of State House Square and Temple Street, respectively.

In fact, because of certain changes by the building contractor during the construction of State House Square, of which neither Close nor Miller was aware and which did not appear on the " 'as built' " plans, when, in late 2004, the Sage Allen building was demolished in preparation for the construction of Temple Street, it was discovered that the cement floor slabs of State House Square extended over the property line. The projections over the property line varied from several inches to more than nine inches. When these encroachments were discovered, the owners of both State House Square and Temple Street made claims against their title insurance policies issued by Commonwealth and Fidelity, respectively. Commonwealth paid $98,330.30 to the owner of State House Square, and Fidelity paid $85,018.15 to the owner of Temple Street.

Thereafter, Commonwealth and Fidelity brought a direct action against Close and Miller claiming professional negligence in connection with the certified surveys that Close and Miller had issued, to recoup the amounts that they had paid to their insureds, which included attorney's fees incurred by the insureds. The trial court, *Hon. Robert Satter*, judge trial referee, found both Close and Miller liable in negligence.

Regarding damages, both Close and Miller contended that both Commonwealth and Fidelity had failed to

prove any damages. More specifically, they contended that Commonwealth and Fidelity had failed to prove by a preponderance of the evidence that their insureds had incurred any measurable lost rental income as a result of the encroachments that Close and Miller had not disclosed.

Judge Satter rejected this contention. As a matter of law, he first noted that the action before him was a direct action, not a subrogation action. Thus, Commonwealth and Fidelity did not—as they would if it were a subrogation action—stand in the shoes of their insureds. Instead, he stated, "[i]n contrast to a subrogation action, in which the insurance company must prove as damages the actual loss suffered by the insured, where there is privity and direct liability between the insurance company and the tortfeasor, as here, the plaintiffs can recover the amount they paid on the claims of their insureds, as long as those amounts are reasonable and paid in good faith." Analogizing the case to one in which an insured settles with a wrongdoer and then sues its insurer for refusal to defend, Judge Satter, quoting *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 160, 681 A.2d 293 (1996), stated that "the insured need not establish actual liability to the party with whom it has settled, so long as . . . a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an *amount reasonable in view of the size of possible recovery and . . . probability of [a] claimant's success against the [insured]*." (Emphasis in original; internal quotation marks omitted.) In this connection, Judge Satter also noted that, because of the proven encroachments, the "degree of probability of the insureds succeeding against [Commonwealth and Fidelity] was very high."

Applying this law to the facts of the case before him, Judge Satter noted that the owner of Temple Street had

made its claim against Fidelity based on lost rental space in its new building as a result of the encroachment, in an amount it calculated as $157,037. The owner of Temple Street also asserted that its claim would be much higher if litigation caused delays in constructing the building. The owner of State House Square had made its claim against Commonwealth based on the high cost of tearing down a portion of its building, removing encroachments and the risk of a trespass action against it based on the encroachments. In addition, Judge Satter noted that both Commonwealth and Fidelity "recognized that the claims of their insureds could substantially increase by the costs of litigation (particularly when there was no defense)." He then noted that Commonwealth had paid its insured $98,330.30, and Fidelity had paid its insured $85,018.15, including the attorney's fees of the insureds, for which the policies provided. Finally, he specifically found that "[u]nder all the circumstances . . . those amounts [were] reasonable and made in good faith." Accordingly, he rendered judgment in favor of Commonwealth in the amount of $98,330.30, and in favor of Fidelity in the amount of $85,018.15, against Close and Miller. See *Commonwealth Land* v. *Close, Jensen & Miller, P.C.*, judicial district of Hartford at Hartford, Docket No. CV-06-5003046-S (November 5, 2008).

Thereafter, a flurry of unusual activity took place. At the request of the attorney for Close and Miller, Close's professional liability insurance carrier agreed to pay Commonwealth and Fidelity the full amount of the judgment plus costs in exchange for Fidelity's and Commonwealth's agreement to request that the judgment be opened and set aside and then to withdraw the case against both Close and Miller. The attorney for Close and Miller requested this procedure so that there would not be an outstanding judgment on record against them. Ultimately, this agreement was executed: the judgment

was paid in full; the parties filed a joint motion to open and to set aside the judgment, which the court granted; and Commonwealth and Fidelity withdrew the case on December 24, 2008.

On December 28, 2009, Close filed the present action. In each count, Close alleges that its professional liability insurance carrier has assigned to it the right to seek reimbursement of all sums paid on its behalf, plus attorney's fees. Although various legal theories are alleged in the various counts of the complaint, it is fair to say that the gravamen of each is the assertion by Close that "[the defendants'] insureds had not suffered any damages due to lost rental space." As noted above, the trial court ruled that res judicata barred Close's claims.

On appeal, Close first claims that the principles of res judicata do not bar its claims because there is in existence no final judgment on which to premise the application of res judicata. Close bases this claim on the fact that the judgment rendered by Judge Satter in the prior action was later opened and set aside, and the case was withdrawn. We disagree.

It is by now axiomatic that claim preclusion and issue preclusion are two related strands; *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 589–90, 898 A.2d 803 (2006); which are analytically distinct. *Weiss* v. *Weiss*, 297 Conn. 446, 458–59, 998 A.2d 766 (2010). We deal here with the strand known as claim preclusion. It is equally axiomatic that the doctrine rests on a prior "*valid, final judgment* rendered on the merits by a court of competent jurisdiction . . . [in an action] between the same parties . . . ." (Emphasis added; internal quotation marks omitted.) Id., 459.

Although both parties acknowledge that they have found no case precisely on point—namely, whether a prior judgment that has been opened and set aside constitutes a valid prior judgment for purposes of claim

preclusion—we agree with the trial court, as well as with the defendants, that under the circumstances of this case, the judgment rendered by Judge Satter fully qualifies as such a judgment, despite the fact that it was subsequently opened and set aside. We reach this conclusion by reference to the purposes of the doctrine of claim preclusion.

"[R]es judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 192–93, 680 A.2d 1243 (1996).

"Because [res judicata and collateral estoppel] are judicially created rules of reason that are enforced on public policy grounds; *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 127, 728 A.2d 1063 (1999); we have observed that [the decision] whether to apply either doctrine in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) *Weiss* v. *Weiss*, supra, 297 Conn. 460.

In the present case, but for the procedural peculiarity of the subsequent opening and setting aside of the judgment, there could be no question that Judge Satter's

judgment satisfies the purposes of the doctrine. It was rendered after a full trial on the merits between the same parties. To give it recognition for purposes of the doctrine would promote judicial economy by minimizing repetitive litigation, preventing the rendering of an inconsistent judgment, and providing repose to the defendants. See id. Moreover, it was opened and set aside solely for the economic and professional advantage of Close and Miller, not for any advantage adhering to the defendants. Close cannot now be heard to demand that it not be given its full due simply because it and Miller requested that the judgment be opened and set aside for their benefit. Thus, to deprive the judgment of its characteristics of validity and finality for purposes of the doctrine of res judicata would be to elevate form over substance. We decline to do so.

Close next claims that claim preclusion does not apply in the present case because the issue of the damages suffered by the defendants' insureds has never been decided. Specifically, Close argues that the "gravamen of [Close's] claim in this case is that [Commonwealth and Fidelity] knew or should have known that their insureds had suffered no actual damages as a result of [Close's] alleged negligence, yet in spite of this they paid their insureds substantial claims and immediately sought reimbursement from [Close]. This issue whether [the defendants'] insureds suffered any actual damages is central to this case. The issue was virtually ignored by Judge Satter in the previous litigation. This distinction precludes the application of the doctrine of res judicata to this case." We disagree.

"Under claim preclusion analysis, *a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction,* or series of connected transactions, out of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any

claims relating to the cause of action *which were actually made or might have been made. . . .* [T]he essential concept of the modern rule of claim preclusion is that a judgment against [the] plaintiff is preclusive not simply when it is on the merits but when the procedure in the first action afforded [the] plaintiff a fair opportunity to get to the merits. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.15, p. 618." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Weiss* v. *Weiss,* supra, 297 Conn. 459.

In the prior case, Close not only had the fair opportunity to litigate this issue of the proper measure of damages recoverable by Commonwealth and Fidelity, it actually did litigate that issue. It contended, fully and vigorously, that Commonwealth and Fidelity were only entitled to recover the actual damages suffered by their insureds, measured only by actual lost rental income. Contrary to Close's assertion here, Judge Satter did not ignore that contention. Rather, he rejected it on its merits, because it was, in his view, not the appropriate legal measure of damages applicable to the case before him. Thus, Judge Satter's judgment comes squarely within both the language and the purpose of the claim preclusion doctrine.

It is true, as Close asserts, that Judge Satter did not ever decide precisely what the actual lost rental income suffered by the two insureds was. But that was because, in his view of the law, that was not what Commonwealth and Fidelity had to prove in order to prevail in the case, contrary to the legal contention of Close and Miller. Therefore, the absence of such a factual determination, made because of Judge Satter's application of a different rule of law, does not preclude the application of the doctrine of claim preclusion.

Moreover, if Close and Miller disagreed with that legal determination of the proper measure of damages

in the prior case, their remedy was to appeal, not to have the judgment paid in full on their behalf and then bring this action to secure a different determination. See *Tirozzi* v. *Shelby Ins. Co.*, 50 Conn. App. 680, 688, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998).

In this connection, Miller's affidavit, filed in opposition to the motion for summary judgment in the present action, explaining the lack of an appeal, is unavailing. He asserts as follows: "At the conclusion of the prior lawsuit, before Judge Satter's decision was withdrawn, it was my intention to appeal because I thought it was wrong. . . . My insurance carrier was in favor of settling the claim. Among other reasons, I believe my insurance carrier did not have the same incentive to appeal as I did, as it was not their professional reputation that had been questioned. . . . Although I reluctantly agreed to allow my insurance carrier to settle and agreed to [forgo] an appeal, I would not have given my consent if I had been asked to sign a release, as I wanted to preserve my right to pursue the present claim. I was not asked to sign a release. . . . Further, I asked my insurance carrier to assign to me whatever rights it had against [Commonwealth and Fidelity] title insurance companies to preserve, as far as possible, my right to pursue a claim for damages."

This reveals no more than that Close, as represented by Miller, chose for tactical reasons to forgo an appeal and, instead, to seek to secure by this action the same result that an appeal, if successful, would have secured.[1] That kind of litigation conduct is precisely what the doctrine of claim preclusion is designed to avoid.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[1] We need not, and therefore do not, decide whether Judge Satter's legal determination on the issue of damages was correct.