******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE PROBATE APPEAL OF THE CADLE COMPANY*
(AC 35576)

Alvord, Mullins and Lavery, Js.

*Argued May 28—officially released August 26, 2014*

(Appeal from Superior Court, judicial district of Waterbury, Complex Litigation Docket, Shaban, J.)

*Brian P. Daniels*, for the appellant (defendant Red Knot Acquisitions, LLC).

*C. Donald Neville*, for the appellee (The Cadle

Company).

*Opinion*

ALVORD, J. The defendant, Red Knot Acquisitions, LLC,[1] appeals from the trial court's denial of its motion for summary judgment on the ground of res judicata.[2] The defendant argues that the court should have granted its motion, thereby precluding the plaintiff, The Cadle Company, from litigating its claims in the present action, because the plaintiff could have raised those claims in a prior proceeding between the parties. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's appeal. F. Francis D'Addario (decedent) was an entrepreneur with extensive real estate and business holdings. He died in a plane crash on March 5, 1986, and a probate estate was opened the same year in the Probate Court for the district of Trumbull. The decedent's sons, David D'Addario and Lawrence D'Addario, are the current coexecutors of his estate.

In 1994, the plaintiff purchased a promissory note from a creditor of the decedent and filed a notice of a claim in excess of $1 million against the estate. The plaintiff, an unsecured creditor, subsequently pursued its claim to judgment against the estate in the amount of $3 million. The probate estate remains open, more than twenty-seven years after the decedent's death, and the judgment remains unpaid.

In December, 1997, the estate was indebted to a consortium of banks in an amount totaling more than $48 million (bank debt). At the request of the estate, the defendant purchased the bank debt for approximately $5 million (Red Knot Transaction), conditioned, inter alia, on the simultaneous execution of a forbearance agreement. The liens on certain estate assets that secured the bank debt were assigned to the defendant. Pursuant to the terms of the forbearance agreement, the defendant would refrain from taking any legal action against the estate on the bank debt for a designated period of time. The agreement provided that the estate could purchase the indebtedness from the defendant at a substantial discount if the estate exercised this option by a specified date (estate option). To further secure the estate's indebtedness to the defendant, the agreement required the estate to grant security interests in additional estate assets. The forbearance agreement was executed on December 30, 1997, and the defendant became the largest secured creditor of the estate.

On or about October 9, 1997, which was nearly three months before the execution of the forbearance agreement, the plaintiff filed a motion for order with the Trumbull Probate Court seeking removal of the estate's executors[3] pursuant to General Statutes § 45a-242 (a).[4] In the motion, the plaintiff alleged that the executors had mismanaged the estate and breached

their fiduciary duties by failing to settle the estate. The plaintiff sought orders to (1) remove the executors, (2) appoint a successor professional executor, (3) hire a competent attorney for the estate, (4) hire a competent accounting firm that would prepare an immediate accounting, and (5) obtain appraisals of the estate's real estate holdings. The Probate Court denied the plaintiff's motion on April 29, 1998.

Pursuant to General Statutes § 45a-186,[5] the plaintiff appealed to the Superior Court (prior probate appeal). The plaintiff filed a "Revised Reasons for Appeal," dated May 7, 1999, alleging that it was a creditor of the estate, that the estate had been open for more than thirteen years, that the estate had the assets to pay the plaintiff's claim but failed to do so, that there had been no current appraisals of the estate's assets, and that the current executors were not attorneys, accountants or professional executors. The plaintiff further alleged that its pecuniary interests as a creditor of the estate had been adversely affected by the Probate Court's order and decree because: "(a) the [Probate] Court failed to remove the current executors of the estate, despite the foregoing; (b) the [Probate] Court failed to appoint a professional executor to settle the estate, despite the foregoing; (c) the [Probate] Court failed to appoint an attorney to protect the estate's legal interests, despite the foregoing; (d) the [Probate] Court failed to appoint an accounting firm to administer the estate and failed to order an immediate accounting of the estate, despite the foregoing; (e) the [Probate] Court failed to order the posting of a probate bond, despite the foregoing; [and] (f) the [Probate] Court failed to order appraisals of the real estate owned by the estate, despite the forgoing."

The matter was tried to the Superior Court, *McWeeny, J.*, on July 29 through August 1, 2002. The plaintiff had argued throughout the trial that, because the coexecutors were fiduciaries, it was their burden to show that they had acted properly in their management of the estate. At the close of the plaintiff's case-in-chief, the court ruled from the bench that it was the plaintiff's burden to show that removal of the coexecutors was warranted and that the plaintiff had failed to meet its burden of proof. The court made no finding as to whether the coexecutors had breached their fiduciary duties, but, rather, the court focused on the lack of evidence warranting removal of the coexecutors. The court dismissed the appeal, sua sponte.[6] Our Supreme Court affirmed the judgment of the trial court. *Cadle Co. v. D'Addario*, 268 Conn. 441, 463, 844 A.2d 836 (2004).

On or about April 20, 2010, the plaintiff filed an "Omnibus Motion for Relief" with the Trumbull Probate Court seeking, inter alia, an order of the Probate Court "invalidating and/or voiding liens of [the defendant] on certain assets of the estate." The motion additionally requested

an order of the Probate Court directing the defendant "to disgorge all monies and/or benefits that it received, directly or indirectly, from the sale of properties that were subject to invalidated and/or voided liens." The Probate Court denied the plaintiff's motion on September 15, 2010, and the plaintiff appealed to the Superior Court pursuant to § 45a-186 (present probate appeal).

In its complaint, the plaintiff alleged that it has a valid claim against the estate, that the Probate Court improperly denied its motion for relief seeking the invalidation of the defendant's liens on certain estate assets and the disgorgement of monies and benefits received from the sale of the properties subject to those liens, and that the plaintiff was entitled to the relief sought in its motion. On September 23, 2011, the defendant filed a motion for summary judgment, claiming that the plaintiff's action was "barred by the doctrines of collateral estoppel[7] and/or res judicata in that the enforceability of the [forbearance] agreement pursuant to which [the defendant] was granted the subject liens actually and necessarily was determined in, or, at a minimum, could have been raised in, a prior proceeding in which a judgment was entered against [the plaintiff] after trial." (Footnote added.) The defendant was referring to the prior probate appeal decided by Judge McWeeny on August 1, 2002. The plaintiff filed its objection to the motion for summary judgment on October 10, 2012, and the court held a hearing on January 8, 2013.

On March 28, 2013, the court issued its memorandum of decision denying the defendant's motion for summary judgment. In its decision, the court determined that the doctrine of res judicata was not applicable. In reaching that conclusion, the court stated that it had compared the complaint in the present probate appeal with the complaint and trial record in the prior probate appeal. According to the court, the forbearance agreement was relevant in the prior probate appeal "because of the estate option contained therein." Further, "the plaintiff's claim that the executors fail[ed] to exercise [the option] in a timely fashion, [thereby] causing substantial financial loss to the estate, was one of many acts that [allegedly] warranted their removal. . . . The concern of the court and parties in the [prior probate appeal] was, with respect to the forbearance agreement, whether the executors' *conduct* was improper, not whether the forbearance agreement *itself* was improper. Given these circumstances, the court cannot conclude that the facts underlying the prior and present probate appeals 'are related in time, space, origin or motivation' or 'form a convenient trial unit,' such that there is sufficient identity between the causes of action to warrant the application of res judicata." (Emphasis in original.) This appeal followed.

We begin with the applicable legal principles that govern our analysis. "Summary judgment is the appro-

priate method for resolving a claim of res judicata." *Sotavento Corp.* v. *Coastal Pallet Corp.*, 102 Conn. App. 828, 833, 927 A.2d 351 (2007). "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]he scope of our review of the trial court's decision to [deny] the [defendant's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Doran* v. *First Connecticut Capital, LLC*, 143 Conn. App. 318, 320–21, 70 A.3d 1081, cert. denied, 310 Conn. 917, 76 A.3d 632 (2013). "Additionally, the applicability of res judicata . . . presents a question of law over which we employ plenary review." (Internal quotation marks omitted.) *Nipmuc Properties, LLC* v. *Meriden*, 130 Conn. App. 806, 812, 25 A.3d 714, cert. denied, 302 Conn. 939, 28 A.3d 989 (2011), cert. denied,    U.S.   , 132 S. Ct. 1718, 182 L. Ed. 2d 253 (2012).

"Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. *A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . .* The doctrine of res judicata [applies] . . . as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction . . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. . . . Furthermore, [t]he judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. . . . The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. *We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding.* But the scope of matters precluded necessarily depends on what has occurred in

the former adjudication. . . .

"*Because the operative effect of the principle of claim preclusion . . . is to preclude relitigation of the original claim, it is crucial to define the dimensions of that original claim. . . .* [T]he claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction . . . out of which the action arose. . . . [This] transactional test . . . provides a standard by which to measure preclusive effect of a prior judgment, which we have held to include any claims relating to the cause of action which were actually made or might have been made. . . . [E]ven though a single group of facts may give rise to rights for several kinds of relief, it is still a single cause of action." (Emphasis added; internal quotation marks omitted.) *C & H Management, LLC* v. *Shelton*, 140 Conn. App. 608, 612–13, 59 A.3d 851 (2013).

"[T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 590, 674 A.2d 1290 (1996).

"[T]he essential concept of the modern rule of claim preclusion is that a judgment against [the] plaintiff is preclusive not simply when it is on the merits but when the procedure in the first action afforded [the] plaintiff a fair opportunity to get to the merits." (Internal quotation marks omitted.) *Close, Jensen & Miller, P.C.* v. *Fidelity National Title Ins. Co.*, 130 Conn. App. 174, 183, 21 A.3d 952 (2011). "[T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the earlier proceeding* . . . ." (Emphasis in original; internal quotation marks omitted.) *Nipmuc Properties, LLC* v. *Meriden*, supra, 130 Conn. App. 815. In other words, the doctrine of res judicata does not preclude a plaintiff from pursuing claims that it previously had not been afforded the opportunity to litigate. *Gaynor* v. *Payne*, 261 Conn. 585, 600–601, 804 A.2d 170 (2002).

With these principles in mind, we now address the defendant's claim that the court in the present probate

appeal failed to "[focus] on the identical transaction that formed the basis of [the prior probate appeal and the present probate appeal], namely, the formation of, and performance under the forbearance agreement." Specifically, the defendant argues that the judgment in the prior probate appeal is preclusive because it arose from the same transaction at issue in the present probate appeal, and, therefore, "the procedure in the first action afforded the plaintiff an adequate opportunity to litigate [the] merits [of the present probate appeal] in the earlier proceeding." We disagree.

When the plaintiff filed its motion with the Probate Court seeking removal of the estate's executors in October, 1997, the forbearance agreement between the estate and the defendant had not yet been executed. There is no reference to a forbearance agreement in the plaintiff's "Motion for Order" dated October 9, 1997. The plaintiff alleged that the executors made "improper disbursements to beneficiaries" and that they were "in breach of their fiduciary duties to the estate" because of their failure to "settle said estate" and to retain the services of a "formal attorney or accountant." The Probate Court held a hearing and denied that motion on April 29, 1998, which was approximately four months after the execution of the forbearance agreement. The plaintiff then commenced the prior probate appeal in the Superior Court.

The matter was tried to Judge McWeeney on July 29 through August 1, 2002. It is important for claim preclusion analysis to focus on the issues that were presented or *could have been presented* to Judge McWeeny. In the prior probate appeal the court was reviewing de novo the April 29, 1998 order of the Probate Court. "Probate Courts are strictly statutory tribunals and, as such, they have only such powers as are expressly or implicitly conferred upon them by statute." (Internal quotation marks omitted.) *Gaynor* v. *Payne*, supra, 261 Conn. 596. "[T]he Superior Court, on appeal from probate, sits as, and has no greater power than, a court of probate." (Internal quotation marks omitted.) Id., 599.

"[A]n appeal from a probate order or decree to the Superior Court is not a civil cause of action. It has no more of the ordinary attributes of a civil action than the original proceedings in the court of probate. . . . [A]ppeals from probate are not civil actions because it has always been held that the Superior Court, while hearing appeals from probate, sits as a court of probate and not as a constitutional court of general or common-law jurisdiction. It tries the questions presented to it de novo, but in so doing it is . . . exercising a special and limited jurisdiction conferred on it by the statute authorizing appeals from probate." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 71 Conn. App. 565, 569, 803 A.2d 919, cert. denied, 261 Conn. 941, 808

A.2d 1132 (2002).

In a probate appeal, "*the Superior Court cannot consider events that occurred after the Probate Court hearing . . . .*" (Emphasis added.) *Satti* v. *Rago*, 186 Conn. 360, 369, 441 A.2d 615 (1982). "The appeal brings to the Superior Court only the order appealed from. The order remains intact until modified by a judgment of the Superior Court after a hearing de novo on the issues presented for review by the reasons of appeal. . . . *The Superior Court may not consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked.* . . . Inasmuch as the motion for the appeal is made in the Court of Probate and forms a part of the proceedings in that court, no amendment to it may be made in the Superior Court. The Superior Court, therefore, cannot enlarge the scope of the appeal." (Emphasis added; internal quotation marks omitted.) *Marshall* v. *Marshall*, supra, 71 Conn. App. 569–70.

"The function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. . . . Thereafter, upon consideration of all evidence presented on the appeal which would have been admissible in the [P]robate [C]ourt, the [S]uperior [C]ourt should exercise the same power of judgment which the [P]robate [C]ourt possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt." (Citations omitted; internal quotation marks omitted.) *State* v. *Gordon*, 45 Conn. App. 490, 494–95, 696 A.2d 1034, cert. granted on other grounds, 243 Conn. 911, 701 A.2d 336 (1997) (appeal dismissed October 27, 1998). "An appeal from probate does not vacate the decree appealed from nor does it lift the entire cause from the probate court into the superior court. On the contrary, *it leaves the entire matter as it was in the probate court, there to be continued with and completed according to law, presenting in the meanwhile to the superior court for redetermination, after a retrial of the facts, the special and limited issues embraced within the particular decree appealed from.*" (Emphasis added; internal quotation marks omitted.) *Bishop* v. *Bordonaro*, 20 Conn. App. 58, 62, 563 A.2d 1049 (1989). "[I]n probate appeals, a Superior Court may admit any evidence that was received by the Probate Court or could have been received by it. . . . The converse of this rule is that *the Superior Court may not receive evidence that the Probate Court could not have received because it came into existence subsequent to the Probate Court hearing.*" (Citations omitted; emphasis added.) Id., 64.

In the prior probate appeal, the plaintiff had filed a motion with the Probate Court seeking the removal of the estate's coexecutors *prior to the execution of the forbearance agreement.* The Probate Court denied the

plaintiff's motion on April 29, 1998, which was approximately four months after the execution of the agreement. On appeal to the Superior Court, Judge McWeeny, sitting as a Probate Court, could not adjudicate issues beyond the scope of those determined by the Probate Court in its order denying the plaintiff's motion for removal of the executors. Although Judge McWeeny was required to try the issues presented to him de novo, he could admit only that evidence that was received by the Probate Court or could have been received by the Probate Court. Judge McWeeny could not admit any evidence that came into existence subsequent to the Probate Court hearing on April 29, 1998. Exercising its "special and limited jurisdiction"; (internal quotation marks omitted) *Marshall* v. *Marshall*, supra, 71 Conn. App. 569; the Superior Court, on the basis of the evidence that could be presented with respect to the Probate Court's order, dismissed the plaintiff's appeal for its failure to meet the burden of proof that would warrant the removal of the estate's executors.

On appeal from the trial court's dismissal, our Supreme Court characterized the matter as an appeal from "a motion for order in the Probate Court seeking both the removal of the coexecutors and an accounting and liquidation of the estate." *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 442–43. The Supreme Court stated that, during the trial, the plaintiff "presented evidence concerning its claims of breach of fiduciary duty, mismanagement and waste of estate assets. The evidence related to purchases made by estate owned businesses, the retention of unprofitable estate businesses, the retention and sale of estate properties, and negotiations with the largest creditor of the estate . . . ." Id., 450. With respect to the defendant's relationship with the estate, the Supreme Court stated: "The plaintiff also presented evidence of the [coexecutors'] failure to pay off a debt to the largest secured creditor of the estate, [the defendant]. The parties disputed the amount of the debt, which resulted from bank debt that was consolidated and bought by [the defendant]. The estate believed it had paid off $6,650,000 of the debt to [the defendant], whereas [the defendant] believed the estate had paid only $5 million. [The defendant] and the estate entered into a forbearance agreement that gave the estate an option to pay off the debt at a discounted rate. The rate of discount was dependent upon the timeliness of the estate's payment and was set to expire on January 7, 2003. Negotiations to extend the payout period were ongoing at the time of the trial." Id., 452.

In determining whether the trial court properly concluded that the plaintiff had the burden to prove that the executors' conduct warranted their removal in a probate proceeding brought pursuant to § 45a-242 (a), our Supreme Court first reviewed the law concerning the removal of fiduciaries. Id., 455–56. After setting forth

the provisions of the statute, the court stated: "Our case law recognizes that [r]emoval of an executor is an extraordinary remedy designed to protect against harm caused by the continuing depletion or mismanagement of an estate. . . . In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct." (Internal quotation marks omitted.) Id., 457. "[U]nderlying the rule that removal is an extraordinary remedy to be applied sparingly is the recognition that the decedent has specifically chosen the fiduciary for the specific purpose of administering his estate and managing the claims of persons with conflicting interests in the estate." Id., 460. Applying those principles, our Supreme Court held: "[T]he burden shifting that ordinarily is employed when a plaintiff has alleged a breach of fiduciary duty does not apply in removal proceedings. Instead, the burden is on the party seeking removal to establish that removal is required to prevent continuing harm to the interests of the estate." Id., 461. The judgment of the trial court was affirmed. Id., 463.

In the present probate appeal, the plaintiff is claiming that the Probate Court improperly denied its "Omnibus Motion for Relief" because the forbearance agreement, which required that the estate grant the defendant additional liens on remaining estate assets, "significantly harmed unsecured creditors." In that motion, the plaintiff additionally alleged that the forbearance agreement may have been amended after its execution, that the defendant's claim was now secured by "all or substantially all of the assets of the estate," that the coexecutors had "secured permanent roles as executors," that "the sale of the [banks'] claims to [the defendant] and the granting of the additional collateral were orchestrated by David D'Addario so he could personally remain in control of the estate," and that the liens on the additional collateral were "void as not being in the best interests of the estate and/or its creditors." The Probate Court denied the motion. On appeal to the Superior Court, the matter will be tried de novo, and the plaintiff will be permitted to submit evidence that it did or could have presented to the Probate Court. This will include evidence up to the date of the Probate Court hearing, which was September 8, 2010.[8]

We conclude that the plaintiff's claims in the present probate appeal involve different operative facts than those underlying the claims in the plaintiff's prior probate appeal, which demonstrates that the plaintiff did not have an adequate opportunity to litigate the present claims in the earlier proceeding.[9] When the Probate Court held the hearing on the motion to remove the executors on April 29, 1998, barely four months after the execution of the forbearance agreement, it would have been premature to assess the effect of the Red Knot transaction and the forbearance agreement on the

estate and its creditors. When Judge McWeeny dismissed the plaintiff's appeal from the Probate Court's denial of the removal motion on August 1, 2002, he expressly stated that the Red Knot transaction "can't be viewed as a mistake *at this point*." (Emphasis added.) He further stated that he expected that the executors would settle the estate "within one to two years subject to litigation contingency." That was twelve years ago, and the estate remains open.

The plaintiff claims that the relevant facts that it relies upon in the present probate appeal had not occurred or were not known to it at the time of the hearing before the Probate Court in the prior probate appeal. Accordingly, the present claims were not litigated in the prior probate appeal, nor could they have been litigated. The plaintiff did not have an adequate opportunity to address the present claims fully and fairly in the prior probate appeal because the prior probate appeal centered on the plaintiff's burden to prove that removal of the executors was required to prevent continuing harm to the estate. See *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 454–55.

For the foregoing reasons, we conclude that the court properly determined that the defendant failed to demonstrate that it was entitled to judgment as a matter of law on the ground of res judicata and, therefore, that the court properly denied the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

* The appeal in this case was originally filed with the caption *The Cadle Company* v. *Trumbull Probate Court et al.* The caption has been changed to reflect that Trumbull Probate Court is not a party. It should be noted that the microfiche version of the Appellate Court Record and Briefs in this case will be found under the original caption.

[1] The plaintiff, The Cadle Company, commenced the present probate appeal by filing a complaint against the Trumbull Probate Court, Red Knot Acquisitions, LLC, and several other defendants. The only defendant involved in the present appeal is Red Knot Acquisitions, LLC. We therefore refer in this opinion to Red Knot Acquisitions, LLC, as the defendant.

[2] Although the denial of a motion for summary judgment ordinarily is not appealable because it does not conclude the action, the denial of a motion for summary judgment predicated on a claim of res judicata or collateral estoppel has been deemed to constitute a final judgment for purposes of appeal. *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 346 n.7, 63 A.3d 940 (2013).

[3] At that time, the executors of the estate were Lawrence D'Addario, David D'Addario and Albert F. Paolini. Paolini died a few years later. The current coexecutors of the estate are David D'Addario and Lawrence D'Addario.

[4] General Statutes § 45a-242 (a) provides in relevant part: "The court of probate having jurisdiction may, upon its own motion or upon the application and complaint of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, [or] wastes the estate in such fiduciary's charge . . . [or] (3) because of unfitness, unwillingness or persistent failure of the fiduciary to administer the estate effectively, the court determines that removal of the fiduciary best serves the interests of the beneficiaries . . . ."

[5] General Statutes § 45a-186 (a) provides in relevant part: "[A]ny person aggrieved by any order, denial or decree of a court of probate in any matter,

unless otherwise specially provided by law, may . . . appeal therefrom to the Superior Court. Such an appeal shall be commenced by filing a complaint in the superior court . . . . The complaint shall state the reasons for the appeal. A copy of the order, denial or decree appealed from shall be attached to the complaint. . . ."

[6] Judge McWeeny ruled in relevant part as follows: "As I've indicated, the standard, I believe, is not—they just have to do more than prove that there's a fiduciary relationship. I think that based on [§ 45a-242], based on the fact that the decedent designated certain individuals to be his executors, creates, along with the limitations on court authority over estates, creates a burden on the party moving to remove the executors. So I do place the burden on the plaintiff, The Cadle [Company].

"In the evidence here the [plaintiff] [has] offered no plan of liquidation. [Its expert's] opinion is that the estate could be concluded within one to two years subject to litigation contingency. I expect that the current executors could do and will do [that] as well.

"The evidence presented by the plaintiff . . . regarding the Red Knot issue is that there are negotiations over an extension of the payout timetable. Mr. [David] D'Addario, the only direct witness on it, was, I felt, optimistic about a resolution of that situation. Certainly the current executors would be in a better position to accomplish this than someone who would be appointed as a result of this appeal. The cost of a professional executor would be an added burden on the estate. . . .

"The Red Knot extra interest expense at $1,927,790 is unsubstantiated. They accomplished quite a bit in reducing the secured debt from $55 million to $5 million and paying a premium to get the cash under those circumstances was—can't be viewed as a mistake at this point. The expert evidence is not supported by corroborative evidence, ignores existing probate filings, tax returns, court rulings and is also replete with many mistakes.

\* \* \* \*

"So, in my view, the plaintiff has not met its burden, and the appeal in the case is dismissed."

[7] At oral argument before this court, the defendant represented that it was proceeding solely on the ground of res judicata.

[8] The plaintiff also claims, as an alternate ground to affirm the court's denial of the defendant's motion for summary judgment, that the "material change in circumstances" exception to the doctrine of res judicata is applicable in this case. See *Sotavento Corp.* v. *Coastal Pallet Corp.*, supra, 102 Conn. App. 837. The plaintiff claims that, until certain estate accountings were unsealed in 2011, it did not know that the executors were being deceptive when they claimed that they needed the benefit of the Red Knot transaction because the estate was allegedly unable to pay off the bank debt. Further, the plaintiff argues that "[b]efore the [motion for] removal [was filed in the prior probate appeal], the Red Knot transaction looked like a bad deal. However, based upon events that came to light after the removal action, it is now clear that the transaction was only a bad deal for creditors. It was, in contrast, a fantastic deal for [Greg] Garvey, [the principal of the defendant] and [David] D'Addario. They made millions and stand to make millions more while leaving creditors holding the bag. However, based upon the veil of secrecy, these issues were not discovered (or understood) until after the [motion for] removal . . . ." The plaintiff claims that the estate's debt to the defendant now is in excess of $100 million.

The trial court did not reach the issue of whether there had been a material change in circumstances, having concluded that the doctrine of res judicata did not apply because the facts underlying the prior probate appeal and the present probate appeal were not related in "time, space, origin, or motivation." (Internal quotation marks omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 590. Because we affirm the judgment of the trial court we need not address this claim. *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 375 n.5, 3 A.3d 892 (2010).

[9] "Res judicata is, by its very nature, extremely fact specific in application. Thus, [the] application of res judicata . . . necessarily turns on the precise nature and substance of the second action." *Weiss* v. *Weiss*, 297 Conn. 446, 469, 998 A.2d 766 (2010).